Thank you, Your Honor. My name is John Rhodes from the Missoula Office of the Federal Defenders of Montana. With me at council table is Lisa Pope, a third-year law student at the University of Montana School of Law, who helped me on the briefs. We represent Mr. Petroff. We're here arguing three sentencing errors. First, Mr. Petroff's sentence did not comply with Booker and Ameline. Second, the fraudulent relocation enhancement imposed by the district court as a matter of guideline law was not supported by the facts in this case. And finally, the obstruction of justice enhancement imposed by the district court had several errors. First, the court based it on things, so it's unclear what the basis of the court's enhancement was. Second, if the court did base it on comments about Mr. Petroff's former spouse and Mr. Petroff's financial conditions, the court didn't specify what those facts were, and the court never resolved any disputes that we raised regarding those issues. And finally, before we went into court, the basis in the PSR for encouraging the obstruction enhancement wasn't anything the court relied upon, so we feel there was a notice error. You are one of the early attorneys, I will say, arguing the effect of Booker-Fan-Fan. If you are correct that we need a remand under Booker, do your other two issues essentially fall out and we wouldn't need to decide those? In most cases, I would say they would, Your Honor. The problem here is that Mr. Petroff's maximum sentence under the statute is two years. That's what he got, and that sentence expires in June. So I'm afraid if the court doesn't provide guidance on the fraudulent relocation and the obstruction issues, that we can go back to the district court. It can impose the same enhancements. It will never be able to get back up here in time to have the case sent back down for Mr. Petroff to benefit from any relief. So even if the enhancements were advisory, if the judge were legally mistaken as to his interpretation of how to apply them, then there would be an error in a potential future sentence, is that what you're saying? Yes. I think if the court relies upon bad advice, that's wrong as a matter of law. One of the difficulties with going beyond the Booker remand is that we're talking about the application of a discretionary system now. So I'm not quite sure how we can give advice for the court as to these other sentencing issues when they're no longer mandatory. So, I mean, if the court looks at them a different way, maybe the court can do that. In other words, you're asking us to give advice in the form of a dictum of some kind, which is hard enough even when we know what the issue is, but how can we do that when Booker is still somewhat up in the air as to what it means for these other issues? Well, under the court's amyloid decision from last week, the guidelines are one consideration among several listed in 3553A. And our position is, if the guidelines are miscalculated, then the court's relying on bad advice in reaching its ultimate decision. So I think still as a matter of law, the guidelines have to be calculated properly so the court has the right consideration in reaching whatever discretionary decision it imposes. And here the fraudulent relocation is the best example of that. In order for the fraudulent relocation enhancement to apply, there has to be a fraudulent scheme. Here there was no fraudulent scheme. There was merely a violation of a court order to pay child support, and we don't believe that qualifies as a fraudulent scheme. More particularly, in order for that enhancement to apply, there has to be sophisticated means as we brief to the court. And here there's simply no evidence whatsoever that Mr. Petroff engaged in any sort of sophistication. The bottom line is for approximately seven months of a six-year period, he used a wrong Social Security number, and he used that in one state. So it wasn't as though he had some sort of fly-by-night operation that was jumping from jurisdiction to jurisdiction to jurisdiction. It's going to be kind of interesting. What Booker gave with one hand, it took away in fan-fan. It gave back discretion for the judge to look at the very things that were said to have to be decided by the jury, as long as it was mandatory. It seems to me in this case that your client's a con man. I think that's kind of how you read the record. And if we send it back, which I think we have to under Booker, it seems that there are a great many ways in which the judge could impose the same sentence. And I'm not sure how much advice we should give him about the possible error of his ways. It's kind of an odd but interesting case. Well, as I said, my concern is the judge is going to start at too high of a guideline sentence because the court has done that once, particularly at the fraudulent relocation, where I believe the court is wrong as a matter of law. The obstruction of justice, I believe the biggest problems there are Rule 32 problems. Well, let's say he goes back and he says, you know, well, maybe it's not a fraudulent scheme, but I think I could impose it under the advisory guidelines. On the other hand, like Judge Fletcher says, basically this guy's a con man, so I'm not too comfortable with just the two years. And since I now have wide open discretion, I basically kind of find that the amalgamation of his misdeeds deserves a little more than he might get just in his normal maximum. So I'm going to impose that. And if it came back up to us, we would then have to say, is that reasonable? You see what I'm saying? He might not even invoke the guidelines. He wouldn't have to invoke the guidelines. He could just say, in my discretion, the sentence doesn't fit the crime here. Your Honor, we would argue that the district court has to invoke the guidelines as a matter of ex post facto, that at the time Mr. Petroff committed his crime of not paying his child support, he was operating under this legal fiction that people commit crimes knowing what the maximum punishment is, under a mandatory guidelines system. And although that guidelines system has to comply with the Sixth Amendment, as articulated in Blakeley and Booker and this court in Ammaline, that doesn't mean that also the Booker remedy would apply. So we would argue that the maximum sentence that Mr. Petroff can receive is a sentence that's calculated under the guidelines that complies with the Sixth Amendment requirements articulated in Booker. And that's kind of a new twist on the argument, which is giving us – I mean, that's obviously – you've kind of pinpointed the difficulty we're having with Booker-Fan-Fan, because every time we turn the corner, each case is a little different, and you've now identified a whole other class of cases. I mean, that's another issue that isn't really before us now. That's why they break it off. But that's another problem with us trying to reach out and provide guidance on an issue that isn't presented. We may shoot ourselves in the foot or screw up the law or say something that misleads courts as to other issues that aren't yet here. At least I'm skeptical that we can do anything other than just remand on the issue that's required. But I'll study your briefing on that. Did you want to reserve time for rebuttal? Yes, Your Honor. Thank you. All right. We'd like to hear from the government then, please. Thank you, Your Honors. I'm Marcia Hurd from the District of Montana. I am stationed in the Billings office. This was my case in the court below, although I didn't personally handle the sentencing. Do you agree that we need to remand pursuant to Booker? I do not, and here's why in this case. This case is very different than Ameline and Booker, in that this defendant, number one, pled guilty, and so there was no jury trial. Number two, he admitted in his sentencing memorandum and at the time of sentencing that every fact contained within the pre-sentence report was accurate. This is not an Ameline disagreement about a fact such as drug quantity. This is a disagreement about do those facts support the legal conclusions of, number one, fraudulent relocation, and number two, obstruction. So I do not believe that this case needs to be remanded pursuant to Booker or pursuant to Ameline because there are no factual issues in dispute. The defense attorney and the defendant were asked several times during the sentencing if they had any dispute with the facts contained within the pre-sentence. But what about the situation that even if we take your approach to the case, the district court thought it was bound by the guidelines, and now it turns out that was a mistaken application. Of course, who could have imagined? But so it came as a big surprise to everybody, I think, in the end. But that's the situation. And Mr. Petroff was sentenced under the regime of a mandatory guideline regime, which turns out to be legally faulty. Why don't we just send it back and let the district court resentence? Because if anything, what you're looking at here, I believe, is harmless error because it's clear, and I think it's clear to all three of you sitting as the panel, that Mr. Petroff is a kind man. But how do we know? Wait one second. First of all, I'm not taking a position whether he's a con man or not. I don't have to at this proceeding, and that's not my job. But whether or not he is a con man, under Booker, under Justice Breyer's opinion on the remedy, the guidelines have to be interpreted to be discretionary and not mandatory. So how can we possibly know what the district judge would have done with a discretionary system? I think he's made it very clear from the entire sentencing proceeding. If you read it from beginning to end, it is permeated with the district court's distaste for Mr. Petroff's actions, his acts, and hoping to give him the maximum sentence he could. He was looking at a guideline range of a minimum of 24 months and upwards because of the guideline calculation, but capped at a statutory maximum of 24 months, and the court gave that to him. And we have no indication from the record at all that that sentence would have been any different under a discretionary sentence or a guideline system rather than a mandatory guideline system. But that's rare. The reality is we do see on appeal district judges who say, oh, I'm chafing under this guideline. But usually they kind of suck it up, basically, and they sentence under the guidelines. A few of them, you know, get a little, you know, wordy on the record about why they do or don't like the guidelines. But how could we, like, read the judge's mind that, you know, if there were no guideline range, then how do we know that he would imagine the top of the guideline range, the need to go beyond it? He might have just said, well, you know, if there's no guideline range, then I think such and such is a reasonable sentence. And I think we'd be trying to read his mind. I mean, what's the harm under this whole new regime of having Mr. Petroff resentenced under the new constitutional regime? I don't know that there's any specific harm in it. I just don't think that it's necessary under this very unique case, where the judge gave him the maximum that he could, which was the minimum under the guidelines. If you look at the very end of the sentencing transcript, he indicates some comments about Mr. Petroff that I think are very telling about his thoughts about this case. And he indicates one point in the transcript that he agrees with Mr. Petroff's own father, that he is a con man and could con a person out of his own dentures. And so I don't think there is any secret to the fact that in this specific case, under these circumstances, this judge wanted to give this defendant the maximum he possibly could, whether the guidelines were advisory or whether they were mandatory. And so I don't think it's necessary in this case to send him back. In most cases, it probably will be. But I think this is a very unique situation, given the fact that it's a really low statutory maximum and that he was given that as a bottom of the guideline sentence in this case. Counsel, do you have any view as to if we send it back, whether we must vacate the sentence or whether we can just send it back for further review? I think that you can send it back for further review, indicating pursuant to Booker and the new Ammaline decision that the court needs to relook at the issues in terms of a 3553A reasonable sentence. I don't think that this court should be in the position of giving an advisory opinion to the district court about what it should do on remand in terms of the fraudulent relocation or the obstruction enhancements. The sentence is now going to be based upon reasonableness. And I don't think that the panel can decide a reasonable sentence and send it back to the judge for imposition of that sentence, which is, in effect, what the advisory opinion is asking for this court to do. Well, that wasn't really what my question was directed at. I just wondered whether the law requires us to vacate the sentence if we're going to remand or whether we can simply just remand, leaving the sentence in place and saying, District Court, you've got to look at this again. Yeah, I think you can just remand. I don't think you need to vacate the sentence. Obviously, everybody understands the situation now and everyone needs to relook at those sentences if, in fact, it's required under Booker with this specific case and decide what a reasonable sentence is. And if the district court goes back and looks and says, I believe that those enhancements were appropriate and were reasonable and I believe that the same sentence is reasonable, there's no sense in an entire resentencing proceeding. I think you can simply remand without vacating the sentence. Do you think that that suggests a different procedure on the part of the district court? Would he have to bring the defendant in for resentencing or if the sentence hasn't been vacated, whether he can simply say, same sentence, these are my reasons? Well, if you don't vacate the sentence, if the sentence stays in place and it's remanded to the court to consider the Booker, Fanfan, and Amaline implications, the district court could simply reimpose the same sentence and say it's reasonable and here's why I believe it's reasonable. But the question is, does he have to bring the defendant before the court? These are a lot of questions that we've been puzzling over and I thought I will ask the various U.S. attorneys what their view is on that issue. Well, I'm sure you can probably get several different opinions on that because obviously he's going to resent the entirety of the defendant but of course that's the right to be present. And I think that even on a really looking at the issue of reasonableness under Booker, Fanfan, and Amaline, I think the defendant probably does have the right to be present simply because his counsel is going to want to present arguments about why he thinks or doesn't think that 24 months is reasonable and that's the type of area that the court is thinking about. And I think the U.S. attorney is going to have to as well. For some reason... Just a minute. You're breaking up for some reason. Is it by chance your microphone has changed positions? Can you just speak again and let us see? Can you hear me now? We can hear you but we're getting a little bit of a gravel breakup. But go ahead. Okay. Justice Gould, I believe you had a question. Well, I was just going to make the same comment about your voice transmission wavering here a bit and ask you to check your mic. Any other questions? No, I have no other questions. I don't think we have any other questions. Thank you for your candor about the sentencing difficulties. We appreciate that. Thank you. Your Honor, starting with the point that somehow reband is unnecessary, acquiescence under preponderance of the evidence standard to a PSR is not proof beyond a reasonable doubt. And so I firmly believe that this case should be vacated, dissent should be vacated. My client needs to be in court because he needs to confront all of these allegations against him. And the reality is if you read the PSR, Mr. Petroff is a litigious fellow in his civil business life. He's going to want to be there. And if they're making these allegations that the district court may or may not have relied on because the record is unclear, he should be there so we can challenge them. It doesn't matter to our decision, but just as a matter of interest, where is he presently located? I believe he's in SeaTac, Your Honor, which is good for us because that's one of the few places he's in Texas, which would take a long time to get him back to Montana. Moreover, Mr. Petroff never knowingly and intelligently waived his Sixth Amendment rights to have proof beyond a reasonable doubt to determine any facts that were going to increase his maximum sentence. And given those facts, Ameline speaks directly to the fact that this case does have to be remanded. At pages 16 and 17 of the slip opinion, this court basically says we're not going to place ourselves in the shoes of the district court and make judgments for it because it impugned the fairness, integrity, and public reputation of judicial proceedings. And that's what the government is asking this panel to do is just guess at what Judge Malloy may do. And if all these facts are trotted out under a beyond a reasonable doubt standard, it may well be that we can convince the court that a lot of what's been called con man facts aren't true. There's no law that establishes that if it's a discretionary system, it's as far as I know, there's no precedent saying if the system is discretionary, then the judge has to make findings beyond a reasonable doubt. Your Honor, I... That's an issue that we had not presented in Ameline and we did not express a view on it. We have a footnote reserving that issue. So I'm just saying it's not established whether the judge finding needs to be by preponderance of the evidence or beyond a reasonable doubt. Obviously, that's going to be our position in this case as well as my position for all my clients. You're free to advocate your position, but I just wanted to express that on the record that that's an open question. Thank you. Thank you, Your Honors. The case of United States v. Petroff is submitted and we will conclude the video transmission. Thank you, Ms. Hurd. Thank you.
judges: B. Fletcher, McKeown, Gould